Good morning, Mr. Dupree. You have about five minutes. You can begin whenever you're ready. Thank you, Judge Bianco, and may it please the Court, Tom Dupree for The Nielsen Company. We are here this morning challenging a preliminary injunction that bars us from offering to sell our product at a commercially unreasonable price. We are asking this Court for This is for a stay, right? That's correct. We're not arguing a preliminary injunction. Correct, Your Honor. We're asking this Court to enter a stay pending appeal because we've raised serious questions on the merits and because even the district court found that we would suffer irreparable harm absent a stay. The first problem with the preliminary injunction is that it rests on a so-called constructive tying theory. Now, of course, there can be no tying, constructive or otherwise, absent an actual tie, absent coercion. This appears to be the first case in history, to the Party's knowledge, where a court has actually imposed antitrust liability for constructive tying. Of course, the United States Supreme Court in Trinco said that even a monopolist In your five minutes, you aren't pitching the merits. You just want a stay, right? That's correct, Your Honor. So you're trying to show likelihood of success, the absence of likelihood of success. But my question is, what's the status of the negotiations? Well, the negotiations are ongoing, Your Honor. And Nielsen has never walked away from the negotiations or established a firm position as to what the deal is. They've offered various possibilities. The parties were engaged in an everyday, ordinary commercial negotiation that occurs in the United States. So why are we concerned about that? I mean, why should we be involved now in this case if the negotiations are ongoing? Well, precisely because the district court's preliminary injunction throws these negotiations into chaos, because it now, under the terms of the preliminary injunction, these negotiations are subject to this judicial price-setting order. That's precisely why we actually need a stay pending appeal, to Your Honor's discretion, to allow these negotiations to play out the way that they were before the injunction was entered. The other problem I have with the other side's case, and I'll be anxious to hear what they have to say, is the problem of irreparable harm. We're all talking about money here, aren't we? Exactly right, Your Honor. That can be adjusted later on, depending on the outcome of the case? Your Honor, you hit the nail on the head. They are seeking money damages. Their injury is financial in nature. Money damages, this Court well knows, is the quintessential form of the ---- Well, then they say, oh, we're going to go bankrupt, and it's the end of the company. Even the district court didn't accept that argument, Your Honor. They made that argument in the district court. The district court rejected that argument and, in fact, said in page 41 of its opinion that Cumulus's alleged dire financial state is no fault of Nielsen, and we're not obligated to offer our product at a price they find reasonable. So you're absolutely right, Your Honor. That argument particularly does not fly. The other merits point that I do just want to touch on ---- Why are they asking for the ---- on this preliminary injunction? They haven't ---- the preliminary injunction seems kind of vague to me, and are they asking a court to decide what the right price is for the nationwide services? That's exactly right, and that's where I was going, Your Honor. This injunction patently fails Rule 65. Rule 65 says injunctions must be specific. They need to tell the enjoined party precisely what conduct is prohibited. This injunction is vague in the extreme. No one knows what a commercially reasonable price is, and yet we are now negotiating under pain of a contempt ---- Well, a commercially reasonable price is apparently one that's fairly negotiated between the parties. Well, Your Honor, it is a mystery to everyone in this room what on earth a commercially reasonable price is, and yet we are now in a position, to Your Honor's prior point, of having to negotiate this deal under the potential sanction of contempt if we make a price that the district court later deems to be commercially unreasonable. Negotiations can't happen in this environment. That's why we need a stay pending appeal to enable these negotiations to play out in their ordinary course without the specter, the Damoclean sort of contempt hanging. If you came up with a commercially ---- the court's view, commercially unreasonable price, and the court said, well, that's unreasonable, then you're back to negotiating table there anyway to get another price, if possible. Your Honor, this is ---- this injunction, to say the least, is unworkable in the extreme. We've never seen anything like this. We think that the easiest solution here is simply to enter a stay pending appeal. I'd remind the Court also of ---- Your offers were a bit difficult for the other side to swallow, but that doesn't mean that they can't come back and counter it. Absolutely. And that's the thing, Your Honor. This was an initial opening offer. This was the beginning offer that we put on the table. And this Court has said, you don't impose antitrust liability for a bargaining position or a hard-edged negotiation tactic if it did. Pretty much every company would be liable for antitrust violations. That's yet another problem with this injunction. And finally, if I could just close, just remind the Court, Justice Scalia and Trinco, the famous Trinco case, Justice Scalia wrote for the Court. He said, Federal district courts hearing antitrust cases should not act as central planners, they should not set prices, they are ill-suited for that role. That is precisely what the district court did here and why this Court should grant a stay pending appeal. Thank you, Mr. Dupree. We'll hear from Ms. Wallington. May it please the Court, Katie Wellington, on behalf of Cumulus. So I want to start first with this argument that there is no such thing as constructive time. The Supreme Court addressed this issue in the Lowe's case and said that there can be time that is expressed or implied. In that case, the district court entered an injunction that had two parts. You may be right, you may not be right, but what's your argument about having a merits panel take a hard look at that issue, which is, we're not a merits panel, we're just here to figure out whether there's a stay. What's the problem with that? So we have moved incredibly quickly in this case. We went to a hearing, we filed in October, went to a hearing in December. We can move quickly. Next available merits panel. So our concern here is that we can't wait for the next available merits panel. Why? The financial situation of the company is that severe, Your Honor. That's why the district court- I don't understand that. I mean, what's going to happen now? I mean, you've been alive and well for all these years. What's going to happen in the next few minutes? I think we are indeed concerned that in the next few minutes, there will be a significant financial concern that is addressed- The district court didn't make that finding. She specifically said she's not making a finding that there's going to be a bankruptcy or something like that. And as they noted, you didn't even counteroffer. You haven't even counteroffered their initial offer. You just immediately sued them for- I mean, you're citing a Supreme Court case, but I don't think there's been any court in the United States of America that has found constructive bundling. So, yes, the U.S. Supreme Court has, in fact, and I want to upheld- You cited a 1967 case from this court to support your position. That's what the district court relied on, right? Right. And the U.S. Supreme Court upheld an injunction in that case that prohibited the sale of an individual film in a package that had the effect of conditioning the sale of one film on the sale of another film. That's a U.S. Supreme Court decision. That's binding. The Cascade Health case at 515 F3rd and 900 held that there was a question of fact as to- You know, you may be right at the end of the day, but this is a case that raises some unusual issues, issues that, you know, even our court hasn't seen and certainly doesn't see with any regularity. What's your argument about having these issues get careful, methodical consideration, reading the briefs, looking at the records, studying the record, et cetera, et cetera? So, I would direct this court to the sealed record at AA 20 through 22, 71 through 78 that talks about the financial circumstances. I would direct your honor to declining levels of cash that this company has month over month. Negotiations never were completed, right? We counter-offered, your honor, and that was rejected. So, we counter-offered for local ratings data in 32 markets, and that was rejected by them. So, now they're ready to continue negotiating. So, there was an offer that you didn't like, and then there was a counter-offer. There were several offers you didn't like, and then there was a counter-offer. So- Why aren't we in the middle of negotiations? So, we are seeking to negotiate without an unlawful tie. Monopolis cannot use its coercive market power. Did you ever give a counter on the national rate, right? We, as far as I know, haven't countered on- Wasn't that telling? That you haven't even, you know, tried to negotiate what would be a stand-alone rate to see what they did? And also, you haven't addressed the point, what is a commercially reasonable fee? How are they supposed to figure that out without risking contempt? Right. So, the district court gave them a very easy way to figure that out. They said, you cannot charge us more than you charge anyone else for this stand-alone product. So, the district court- They said for 2026, how do they know what their rate is going to be for other customers for the rest of this year? How would they figure that out? So, it just- It's only presumptively reasonable. Even if they do that, somehow it could be determined to be, you know, the presumption could be overcome. That's a pretty vague thing for them to have to comply with in negotiations. So, the Supreme Court upheld a similar injunction in the Lowe's case. Other courts- Well, just tell me how they're supposed to know. So, they know what price that they have charged for other customers the first month of this year. They know what prices they've sent last year. I don't think it's difficult for them to figure out what commercially reasonable price is. If they're wrong, are they contempt? Well, they have- Well, if they don't- if they charge us less or the same amount they're charging other people, and they have never gotten rid of their express time policy. Why do they have to charge everybody the same rate? Circumstances are different depending upon who the customer is. So, there's been a factual finding by the district court that they are exercising coercive market power, are not charging us a rate that they would charge in the absence of their coercive monopoly market power. That's a factual finding that's subject to clear error review in this court. So, I think you have to accept that the price that they've offered us is a monopolist coercive price. That's been found. So, that is something that can be, it seems to be, should go to the Barrett's panel and can look at that. You can see all these arguments. All we're talking about here is a stay, preserving the status quo until the panelist hears the appeal. So, we are concerned- Do you think their case is not appeal worthy? We think that- Do you think their appeal is frivolous? Is that what you're telling us? It's not a frivolous appeal. But we are concerned that if we wait until this court issues a decision, the irreparable harm that the district court found will occur. And that we will lose our customers, we will lose our market share, we will- Is there an expedited briefing on the Merits? What's the schedule for that? What did you say? What's the briefing schedule for the Merits appeal? Is it expedited or- They have actually requested, they just requested an April 28th deadline, three months from now, for their opening brief. Certainly- And have you requested expedited? We would certainly request expedited briefing, Your Honor. And it's as fast as we can do it, Your Honor. Well, okay. All right. Thank you very much. We'll reserve the decision. Have a good day.